[Cite as *State v. Williams*, 2019-Ohio-1931.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     18AP0004 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RANDY WILLIAMS | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No.     2017 CR-B 000547 |

DECISION AND JOURNAL ENTRY

Dated: May 20, 2019

CALLAHAN, Judge.

{¶1}   Appellant, Randy Williams, appeals his conviction for menacing by the Wayne County Municipal Court.  This Court affirms.

I.

{¶2}   On February 15, 2017, Mr. Williams met with his counselor at Ana Zao Community Partners.  N.N., a caseworker from Wayne County Children Services ("WCCS") who was assigned to a matter involving custody of Mr. Williams' children, also participated in the session.  Her purpose was twofold: to conduct a regular face-to-face meeting with Mr. Williams in a secure location and to share an update with him regarding the status of his case. When N.N. shared with Mr. Williams that WCCS would be returning his children to the custody of their mother, Mr. Williams became angry, loud, and threatening, then left the meeting.  N.N. waited approximately fifteen minutes before walking to her own car.  The following day, after consulting her direct supervisor, N.N. spoke with police.

**{¶3}** Mr. Williams was charged with one count of menacing, a violation of R.C. 2903.22(A). A jury found him guilty, and the trial court sentenced him to 165 days in jail and imposed a fine of $200. Mr. Williams filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE JURY VERDICT FINDING MR. WILLIAMS GUILTY OF MENACING
WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

**{¶4}** Mr. Williams' first assignment of error argues that the State did not produce sufficient evidence to convict him of menacing. This Court disagrees.

**{¶5}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

**{¶6}** Menacing is prohibited by R.C. 2903.22(A), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person * * *." "Physical harm" to a person is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Regardless of purpose, a person acts "knowingly" when "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain

nature." R.C. 2901.22(B). Under R.C. 2903.22(A), therefore, a defendant does not need to intend to cause the victim to fear physical harm; it is sufficient that the defendant was aware that his conduct would probably cause that result. *In re P.T.*, 12th Dist. Clinton No. CA2013-02-006, 2013-Ohio-3881, ¶ 21. An "overt threat" is not required. *Id*. at ¶ 18. "Rather, the statute proscribes a much broader spectrum of behavior by criminalizing any conduct engaged in by a person knowing that such conduct would cause another to believe the offender will cause the other person * * * physical harm." *Id*.

{¶7} At trial, N.N. described the ongoing course of her interactions with Mr. Williams, noting that they were marked by "verbal aggression" and had escalated over time. By the time of her meeting with Mr. Williams on February 15, 2017, N.N. and her supervisors had agreed that she should not meet with him privately. She described Mr. Williams' reaction to the information that she presented to him during the meeting on that occasion:

> He got mad based on the information that I gave him. He, I watched him, he was clenching his fists, um, he was not breaking eye contact with me. He was staring at me which I perceived to be intimidating. He was pointing his finger in my face, raising his voice. Swearing at me.
>
> * * *
>
> Mr. Williams said that he was no longer working with our agency. That if I thought his behavior was bad before I haven't seen anything yet. That I have no idea what he is capable of, but I am going to find out and that that's not a threat.

N.N. explained that Mr. Williams stood in the doorway of the office where the meeting took place when the incident occurred and that only approximately five feet separated them. She noted that both Mr. Williams' tone and body language were threatening and recalled that his behavior made her "feel incredibly unsafe and that he may act upon his statements." Based on her working relationship with Mr. Williams, N.N. summarized the difference between this interaction and their previous encounters:

I had seen Mr. Williams react in anger, [but] this appeared to be very intentional. The statements he made, um, the way he interacted with me during that, I definitely perceived, it was less of a response to being upset and more intentional from the way I perceived it.

N.N. also testified that she waited to leave the facility until approximately fifteen minutes after Mr. Williams left and that in doing so, she gripped her car keys between her knuckles because she was unsure whether he was still outside. Mr. Williams' counselor confirmed N.N.'s account of the meeting and agreed that his manner was threatening.

{¶8} This evidence is sufficient to permit the trier of fact to reasonably conclude, beyond a reasonable doubt, that Mr. Williams caused N.N. to believe that he would cause her physical harm with the awareness that his threatening conduct would probably do so. Mr. Williams' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

MR. WILLIAMS' CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} In his second assignment of error, Mr. Williams has argued that his conviction for menacing is against the manifest weight of the evidence. This Court does not agree.

{¶10} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.* at 340, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶11} In support of this assignment of error, Mr. Williams argues that he did not "actually threaten[]" N.N. and that any testimony on her part that she perceived his actions to be a threat is belied by her failure to contact the police. As noted above, however, R.C. 2903.22(A) does not require "an overt threat." *In re P.T.*, 2013-Ohio-3881, at ¶ 18. With respect to N.N.'s reaction, this Court observes that while it is true that she did not call the police immediately after the meeting, she did attempt to contact her supervisor. She also testified that when she successfully contacted her supervisor the following morning, her supervisor called the Orrville Police Department. N.N. immediately followed up on that call by making a statement in person. N.N.'s testimony at trial also undermines Mr. Williams' supposition that she "did not perceive Mr. Williams['] conduct to be intimidating * * * [and] [t]herefore, she must have only been trying to reach her supervisor to notate the incident moving forward as part of the ongoing case plan." To the contrary, N.N. consistently described Mr. Williams' behavior as threatening and intimidating and noted specifically that she did not feel safe as a result.

{¶12} Given the evidence in this case, this Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. Mr. Williams' second assignment of error is overruled.

### III.

{¶13} Mr. Williams' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

─────

There were reasonable grounds for this appeal.

6

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KRISTOPHER IMMEL, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.