[Cite as *State v. Fourdyce*, 2026-Ohio-1702.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

TOMAS FOURDYCE

    Appellant

C.A. No.    25CA012255

APPEAL FROM JUDGMENT
ENTERED IN THE
OBERLIN MUNICIPAL COURT
COUNTY OF LORAIN, OHIO
CASE No.    24CRB00237

DECISION AND JOURNAL ENTRY

Dated: May 11, 2026

---

CARR, Presiding Judge.

{¶1} Defendant-Appellant Tomas J. Fourdyce appeals the judgment of the Oberlin Municipal Court. This Court affirms but remands the matter for the trial court to issue a nunc pro tunc entry to correct a typographical error in the sentencing entry.

I.

{¶2} In June 2024, a complaint was filed alleging that on June 11, 2024, Fourdyce committed the offense of menacing in violation of R.C. 2903.22 by threatening the Mayor of the Village of Wellington ("the Mayor") during a phone call.

{¶3} The matter proceeded to a bench trial at which both the Mayor and Fourdyce testified. The trial court found Fourdyce guilty and proceeded to sentence him. At the sentencing hearing, the trial court imposed a 10-day sentence which it then suspended. However, the sentencing entry reflects that the trial court sentenced Fourdyce to 30 days with all of it suspended.

Because it is clear that the sentencing entry contains a clerical error, upon remand, the trial court shall issue a nunc pro tunc entry to correctly reflect the 10-day sentence and suspension.

{¶4}    Fourdyce has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO. THE TRIAL COURT ERRED IN CONVICTING MR. FOURDYCE OF MENACING ([R.C.] 2903.22) WHEN THE STATE FAILED TO PROVE THE "KNOWINGLY" ELEMENT.

{¶5}    In his sole assignment of error, Fourdyce asserts that the State failed to prove that he knowingly caused the Mayor to believe that Fourdyce would cause the Mayor physical harm. Thus, Fourdyce maintains that the finding of guilt is based upon insufficient evidence. Fourdyce has not argued that the conviction is not supported by the weight of the evidence.

{¶6}    When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7}    Fourdyce was found guilty of violating R.C. 2903.22. R.C. 2903.22(A)(1) provides in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will

cause physical harm to the person or property of the other person . . . ." "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "'Physical harm to property' means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment. [It] does not include wear and tear occasioned by normal use." R.C. 2901.01(A)(4).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶8} "Under R.C. 2903.22(A), therefore, a defendant does not need to intend to cause the victim to fear physical harm; it is sufficient that the defendant was aware that his conduct would probably cause that result. An overt threat is not required. Rather, the statute proscribes a much broader spectrum of behavior by criminalizing any conduct engaged in by a person knowing that such conduct would cause another to believe the offender will cause the other person . . . physical harm." (Internal citations and quotations omitted.) *State v. Williams*, 2019-Ohio-1931, ¶ 6 (9th Dist.).

{¶9} At trial, the Mayor testified that he had been the Mayor of the Village of Wellington for 9 years and prior to that he had served 14 years as a council member. The Mayor indicated that he had a few dealings with Fourdyce over the years related to different issues. The Mayor acknowledged that Fourdyce had served on the Design Review Board and some of the interactions related to that. Most of the interactions occurred over Facebook Messenger. The Mayor testified that it was common for him to engage in dialogue with residents over social media. The Mayor's

office was also open to the public, and his cell phone number was available to residents. The Mayor also admitted that on rare occasions, a resident would also show up at his house to raise an issue or concern.

{¶10} In May 2023, Fourdyce reached out to the Mayor asking questions about the Cemetery Board. The Mayor told Fourdyce that, if he was having issues with the Cemetery Board, he should probably contact an attorney. Fourdyce thanked the Mayor.

{¶11} Fourdyce later reached out to the Mayor stating that Fourdyce was not getting anywhere with the Cemetery Board. Fourdyce's mother had previously purchased four plots in the cemetery, but they were not completely paid for. Two of the plots housed the remains of Fourdyce's brother and sister and the cemetery may have filled one or both of the other two plots. Fourdyce wanted the Village of Wellington to take responsibility and help resolve the issue.

{¶12} The Mayor proposed that the Cemetery Board would find four new plots and absorb the expense to move the remains of Fourdyce's siblings to the new plots. Fourdyce seemed to be agreeable to the idea but also questioned whether he could sign the agreement if Fourdyce's mother refused.

{¶13} Fourdyce later told the Mayor that Fourdyce's mother was no longer speaking to him and he was upset, agitated, and angry.

{¶14} In approximately April 2024, Fourdyce came to a council meeting and spoke at the meeting. The Mayor described Fourdyce as being angry and indicated that he was saying things that were not true. The Mayor began to interrupt Fourdyce to correct him, and Fourdyce became agitated and ended up leaving the meeting. The Mayor subsequently reached out to Fourdyce and told him that the Mayor probably should have let Fourdyce continue speaking but the Mayor was frustrated with the false statements Fourdyce made at the meeting and previously on social media.

{¶15} Eventually, Fourdyce's mother relented and agreed with the proposed resolution. On June 11, 2024, the Mayor received a phone call from Fourdyce around 6:00 pm. Fourdyce was very irate. He accused the Mayor of knowing that his siblings' remains were being moved that day and Fourdyce was upset that he was not told about it. The Mayor testified that he did not know about the moving of the remains ahead of time as he does not directly oversee the cemetery. The Mayor asserted that he only knew it had occurred after it was over. The Mayor indicated that Fourdyce was yelling on the phone and blaming everyone including the Mayor. Fourdyce then said, "I'm coming for you[.]" Following that statement, Fourdyce ended the call.

{¶16} The Mayor took the statement as a threat and described being shocked. The Mayor took it as a threat because his prior dealings with Fourdyce caused him to think that Fourdyce was someone who "act[ed] on emotion, act[ed] on anger, [and] [absolved] himself of any blame of anything, and cast[] it upon others." The Mayor expressed fear that Fourdyce would show up at his home. The Mayor believed Fourdyce might cause the Mayor physical harm due to Fourdyce's erratic behavior on social media and how he handled other issues. The Mayor reported the incident to the police within 15 minutes of it occurring. Prior to the June 11, 2024 incident, the Mayor had never filed a complaint or gone to the police about Fourdyce's behavior.

{¶17} Fourdyce also testified about the events at issue. Fourdyce acknowledged that Fourdyce's mother had still owed money on one of the plots. In May 2023, Fourdyce visited the cemetery and noticed that one of the family plots had been used when it should have been empty. Fourdyce tried to raise his concern with the Cemetery Board but was not getting anywhere. Then he reached out to the Mayor in June 2023. The Mayor proposed moving Fourdyce's siblings to other graves in the same section. In April 2024, Fourdyce went to the council meeting because he wanted to know the date that his siblings' remains would be moved. Fourdyce described being

interrupted and berated by the Mayor. This made Fourdyce agitated and he left. Fourdyce acknowledged that the Mayor later called Fourdyce to apologize. Fourdyce reiterated in the call that his main concern was knowing when his siblings' remains would be moved.

{¶18} On June 11, 2024, Fourdyce stopped by the cemetery and saw that his siblings' remains were being moved and that they were being moved to a section not in the original proposal. It was very upsetting to Fourdyce because he had made it clear that he wanted to be there for the moving of the remains. In addition, Fourdyce was also distressed because his sister's remains were moved close to the remains of the person who was responsible for her death. Further, the remains of the siblings were not buried in the correct order. Fourdyce called the funeral director and was told that the funeral director was told not to tell Fourdyce the date the remains would be moved.

{¶19} Next, Fourdyce called the Mayor. Fourdyce asked the Mayor if he was aware of the situation and the Mayor said that he had received a message about it earlier but did not care. Fourdyce called the Mayor an "evil person" and said that Fourdyce was "coming for [the Mayor's] title." Then Fourdyce hung up on the Mayor. Fourdyce admitted that he made the statement knowingly and voluntarily.

{¶20} Fourdyce testified that he meant that he was going to run against the Mayor and had no intention of causing the Mayor physical harm. Fourdyce denied ever saying that he was coming for the Mayor. Fourdyce claimed to have posted on social media over the years about his intent to run against the Mayor but did not present any of the posts as evidence. Fourdyce also acknowledged that he no longer lived in the Village of Wellington and could not run for Mayor of the Village of Wellington if he did not live there. Fourdyce additionally admitted that he told the

Mayor in a message on Facebook Messenger that Fourdyce had been caused "so much pain and suffering" and that he was "ready to move forward and make this end once and for all[.]"

{¶21} Viewing the evidence in a light most favorable to the prosecution, we can only conclude that Fourdyce has not demonstrated that the evidence was insufficient to sustain the guilty verdict. There was evidence of a long-standing issue concerning the four cemetery plots and involving Fourdyce and government entities and officials. Understandably, Fourdyce was very emotional and upset about what had occurred and was occurring. Nonetheless, the record contains evidence that Fourdyce called up the Mayor, yelled at him, told the Mayor that Fourdyce was "coming for" the Mayor, and then hung up. The Mayor perceived this as a threat and quickly reported the incident to the police. Irrespective of whether Fourdyce intended to threaten the Mayor, his behavior and statement, when viewed in a light most favorable to the State, support that Fourdyce acted knowingly; it would be reasonable to conclude that Fourdyce realized that his statement, given his irate state, would be perceived as a threat of physical harm. *See Williams*, 2019-Ohio-1931, at ¶ 6 (9th Dist.).

{¶22} Fourdyce's assignment of error is overruled.

III.

{¶23} Fourdyce's assignment of error is overruled. The judgment of the Oberlin Municipal Court is affirmed, and the matter is remanded for the issuance of a nunc pro tunc sentencing entry as explained above.

Judgment affirmed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

PATRICK WARD, Prosecuting Attorney, for Appellee.